United States District Court
Southern District of Texas
**ENTERED**
March 25, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CLIFFORD COOK,             §
(TDCJ # 02086022),         §
                           §
           *Plaintiff*,    §
                           §
vs.                        §    CIVIL ACTION NO. H-24-2711
                           §
RAMSEY I UNIT,             §
                           §
           *Defendant*.    §

## MEMORANDUM OPINION AND ORDER

The plaintiff, Clifford Cook, (TDCJ #02086022), is an inmate in the custody

of the Texas Department of Criminal Justice—Correctional Institutions Division

(TDCJ). Proceeding *pro se* and *in forma pauperis*, he filed an amended complaint

under 42 U.S.C. § 1983, alleging that four TDCJ officials were violating his

constitutional rights. (Dkt. 9). At the Court's request, Cook filed a More Definite

Statement of his claims. (Dkt. 11).

Because Cook is a prisoner proceeding *in forma pauperis* and seeking relief

against the government, the Prison Litigation Reform Act (PLRA) requires the Court

to scrutinize his claims and dismiss the complaint, in whole or in part, if it determines

that the action is (1) "frivolous or malicious," (2) "fails to state a claim on which

relief may be granted," or (3) "seeks monetary relief against a defendant who is

immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C.

§ 1915A(b); 42 U.S.C. § 1997e(c) (requiring screening of all § 1983 actions filed by prisoners). After considering Cook's pleadings and the law, the Court concludes that this case must be dismissed for the reasons explained below.

## I.   **BACKGROUND**

This action started in July 2024, when Cook filed a letter with the Court alleging that Bryan Collier, Executive Director of TDCJ, and three senior officials at TDCJ's Ramsey I Unit were violating certain provisions of a consent decree entered in *Ruiz v. Estelle Unit*, No. H-78-987 (S.D. Tex.), and certain statutes and rulings under Texas law. (Dkt. 1). The Court construed Cook's letter as an attempt to file a civil-rights complaint under 42 U.S.C. § 1983, and it ordered him to file an amended complaint. (Dkt. 8).

Cook timely filed his amended complaint. (Dkt. 9). In that amended complaint, he named the following defendants: Bryan Collier, Executive Director of TDCJ; Warden Deward DeMoss of TDCJ's Ramsey I Unit; Assistant Warden Stephen Massie of TDCJ's Ramsey I Unit, and Major Kerri Baron of TDCJ's Ramsey I Unit. (*Id.* at 6, 8). Cook alleged that these defendants were violating his constitutional rights by failing to comply with the provisions of the *Ruiz* consent decree, by failing to provide proper dayrooms and storage lockers at the Ramsey I Unit as required by Texas state law, by tampering with his legal mail, by retaliating against him for filing grievances and letters concerning the alleged violations, and

by failing to timely and sufficiently address his grievances. (*Id.* at 10-16).

Pursuant to its screening obligation under 28 U.S.C. § 1915A(a), the Court ordered Cook to file a More Definite Statement of his claims. In his More Definite Statement, Cook alleges that the Ramsey I Unit does not have dayrooms available to inmates. (Dkt. 11, p. 3). He alleges that the lack of dayrooms violates Texas Administrative Code § 259.430 and Texas Government Code § 499.001(3)(c). (*Id.*). In addition, because of the lack of dayrooms, inmates have only limited common space outside of their cells. (*Id.*).

Cook alleges that to compensate for this lack of dayrooms and to avoid the overcrowding that could result, the *Ruiz* consent decree required TDCJ officials at the Ramsey I Unit to leave the cell doors on each wing unlocked during waking hours so that inmates could move freely between their cells, the hallways, and other common areas within the locked wing. (*Id.*). But Cook alleges that TDCJ officials are no longer doing so. (*Id.*). Instead, they are now unlocking cell doors once an hour, and even that is not always done. (*Id.*). Cook alleges that because the cell doors are locked during most of the day, all of the inmates end up in the common area, which has only three tables, one picnic-style table, and two benches to accommodate 136 offenders. (*Id.* at 3-4, 7).

Cook alleges that the point of having the cell doors open was to allow inmates to flow back and forth from their cells to the common area rather than being stuck

in one or the other. (*Id.* at 4). Cook alleges that because the Ramsey I Unit officials are no longer leaving the doors open, the common areas have become overcrowded, leading to unsafe living conditions. (*Id.* at 5). Cook also alleges that inmate safety is compromised because the officers assume the inmates are all in the common areas and do not walk through the wing to perform safety checks of the cells. (*Id.* at 3).

Cook alleges that all these failures violate the *Ruiz* consent decree. (*Id.*). He alleges that the defendants are also violating the Eighth Amendment by failing to protect inmates from overcrowding and the risk of assaults and other violence because of the overcrowding. (*Id.* at 5-6). He alleges that the defendants are violating his due process rights by failing to comply with TDCJ's rules and regulations. (*Id.* at 5). In addition, he alleges that the defendants are violating their obligations under the TDCJ Code of Ethical Conduct to promote inmate safety and welfare. (*Id.*).

In answer to the Court's question concerning the time available out of their cells, Cook alleges that inmates have mealtime out of their cells for a total of an hour each day, and they are allowed to shower at least once per day. (*Id.* at 7-8). There are three library sessions each day that inmates may attend, and they are allowed recreation time each day, although the time allowed varies depending on which officers are working. (*Id.*). In addition, inmates are allowed out of the wing to attend classes and medical appointments. (*Id.* at 8). But Cook alleges that because the cell

4/27

doors are kept locked, it is often a "hassle" to get to these appointments and events.

He alleges that inmates must sometimes leave their cells up to two hours before a

class or appointment because of delays in ingress and egress. (*Id.*). He alleges that

inmates sometimes miss medical appointments because no one is available to allow

them off the wing to attend the appointment. (*Id.*). In sum, he alleges that inmates

face a daily "struggle" with prison officials to allow them in and out of their cells,

the hallways, and the wing. (*Id.* at 7-8).

Cook alleges that he suffers extreme stress and depression because of being

denied the freedom to move throughout the wing. (*Id.* at 9). He contends that this

stress and depression affect him physically and "could lead to sicknesses." (*Id.*). He

asserts that he has been emotionally harmed by the daily harassment. (*Id.* at 16). He

alleges that he has also been harmed by receiving disciplinary sanctions for violating

the rules that apply to dayrooms even though there are no dayrooms on the Ramsey

I Unit. (*Id.* at 11, 16) But he does not allege facts showing that he has suffered any

physical injury because of any of the alleged violations of the *Ruiz* consent decree

or Texas state law. (*Id.* at 16).

In addition to the ongoing issue with the cell doors, Cook alleges that the

defendants are violating the *Ruiz* consent agreement by housing two men in a cell

that has less than 60 square feet of usable space once the beds, toilets, and storage

lockers are factored in. (*Id.* at 9-10). He alleges that the Ramsey I cells do not have

a desk, as required by the *Ruiz* consent agreement. (*Id.* at 10). He alleges that the defendants are compromising inmate safety because there is no safe way to get on and off the top bunks. (*Id.* at 3). And he alleges that the size of the storage lockers in each cell does not comply with Texas state law. (*Id.* at 9).

In addition to his allegations regarding the *Ruiz* consent decree and state law, Cook also alleges that mailroom personnel at the Ramsey I Unit have been interfering with his legal mail by refusing to send correspondence addressed to a courthouse rather than to a specific person. (*Id.* at 18, 22). He also alleges that inmates have had their legal mail opened and read outside of their presence in violation of TDCJ rules and regulations. (*Id.* at 18). But other than noting that this has delayed some of his mail, Cook does not identify any legal proceeding of his that has been adversely affected by these alleged violations of TDCJ's mail policy. (*Id.* at 22).

In addition to the alleged mail policy violations, Cook alleges that Warden DeMoss retaliated against him for sending a letter to Texas State Representative Carl Sherman concerning the alleged violations at the Ramsey I Unit. (*Id.* at 25). Cook alleges that when Warden DeMoss learned of the letter, he threatened to have Cook transferred to another TDCJ unit. (*Id.*). Cook also alleges that in November 2024, Major Baron threatened to "take him down" for writing complaints about her. (*Id.* at 25-26, 28). Cook understood this to mean that Major Baron would demote him

6/27

in line-class to tamper with his chances at making parole. (*Id.*). Cook also alleges that Major Baron has other officers write fraudulent disciplinary cases against inmates who file complaints and grievances and that she has other officers "do her dirty work" to try to get inmates to stop writing complaints. (*Id.* at 26). For example, Cook alleges that Sergeant Lopez improperly confiscated his Nike shoes, presumably at Major Baron's request, and Sergeant Lopez has refused to return the shoes even though they are not contraband. (*Id.* at 28). Cook alleges that he has written grievances about all these matters, but those grievances have not been properly investigated. (*Id.* at 18).

Cook identifies the named defendants are "senior officials" who are "responsible to  make sure that all rules, regulations, and policies are met" by the prison officials who work for them. (*Id.* at 32-33). He alleges that the defendants are aware of both the federal court order and state law, but they are ignoring them. (*Id.* at 32).

As relief, Cook asks for an order requiring the defendants to comply with the terms of the *Ruiz* consent decree concerning the cell doors on the Ramsey I Unit. (*Id.* at 36). He also wants the Ramsey I Unit cells to be converted to single cells and to be provided with a larger storage locker. (*Id.* at 36-37). He wants Ramsey I Unit officials to stop enforcing the dayroom rules because there are no dayrooms at the Ramsey I Unit. (*Id.* at 37). He wants the Court to order the defendants to make it

7/27

safer for inmates to get in and out of the top bunks. (*Id.*). Finally, he would like money damages from each defendant to compensate him for the stress, depression, fear of retaliation, and mental anguish he alleges that he has suffered. (*Id.*).

## II.    **LEGAL PRINCIPLES**

### A.    **Actions Under 42 U.S.C. § 1983**

Cook brings this action under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, the plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element, which requires action "under color of state law," means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1283 (5th Cir. 1985).

8/27

**B.**     <u>The Prison Litigation Reform Act</u>

The PLRA, which governs Cook's action, requires the Court to examine the legal and factual basis of a prisoner's complaint and dismiss the case if it determines that the complaint "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005) (per curiam) (citing *Denton v. Hernandez*, 504 U.S. 25, 31–32 (1992)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997) (citing *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). A complaint fails to state a claim upon which relief can be granted if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In reviewing the complaint, the Court must construe all allegations "liberally

9/27

in favor of the plaintiff," "take[] all facts pleaded in the complaint as true," and consider whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up). If it does not, the complaint must be dismissed, even before service on the defendants. *See In re Jacobs*, 213 F.3d 289, 290 (5th Cir. 2000) (per curiam); *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986).

### C.   *Pro Se* Pleadings

Cook is proceeding *pro se* in this action. Pleadings filed by *pro se* litigants are not held to the same stringent and rigorous standards as pleadings filed by lawyers and instead must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999). But even under a liberal construction, *pro se* plaintiffs "must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (cleaned up).

### III.   DISCUSSION

Cook's claims fall into three broad categories: violation of the consent decree in *Ruiz*; violations of state law; and independent violations of his constitutional

10/27

rights.  He seeks both money damages and injunctive relief.  But his pleadings and publicly available records show that he is not entitled to the relief he seeks.

## A.    Cook's Claims for Money Damages are Barred

It is not clear from Cook's amended complaint and More Definite Statement whether he seeks money damages from the defendants in their official capacities, their individual capacities, or both.  To ensure completeness, the Court will address his claims against the defendants in both capacities.

### 1.    Official Capacity Claims

To the extent that Cook seeks money damages from the defendants in their official capacities, they are immune from such relief.

The Eleventh Amendment to the United States Constitution prohibits actions against a state or state official for money damages unless Congress has abrogated the state's immunity or the state has specifically waived it.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Relevant here, Congress did not abrogate the states' sovereign immunity when it enacted § 1983.  *Id.*  And the State of Texas has not waived its sovereign immunity for purposes of § 1983 actions.  *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015) ("Federal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it.  Texas has not consented by statute, and § 1983 does not

11/27

abrogate state sovereign immunity.") (cleaned up).

The fact that Cook has sued state employees, rather than the State of Texas itself, does not change this analysis. When a state employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity"). Cook's claims for money damages against the defendants in their official capacities are construed as claims against the State of Texas and are barred by the Eleventh Amendment. These claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(iii) as seeking monetary relief from defendants who are immune from such relief.

### 2.    Individual Capacity Claims

To the extent that Cook seeks money damages from the defendants in their individual capacities, his claims are barred by the physical injury requirement of 42 U.S.C. § 1997e(e). That section provides that "[n]o federal civil action may be brought by a prisoner confined to a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). This statutory bar applies to all types of federal civil actions in which a prisoner alleges a constitutional violation. *See Geiger*, 404 F.3d at 375.

12/27

In its order for a More Definite Statement, the Court specifically asked Cook whether he had suffered any physical injury as a result of the defendants' alleged violations of his constitutional rights. (Dkt. 10). Cook's response identifies only emotional injuries, not physical injuries. (Dkt. 11). In the absence of some physical injury, Cook's claims for money damages against the defendants in their individual capacities are barred by the physical injury requirement of the PLRA. These claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

### B.   Cook's Claims for Injunctive Relief are Moot

To the extent that Cook seeks injunctive relief, his claims are not barred by Eleventh Amendment immunity. However, publicly available records show that Cook's claims are now moot, depriving the Court of jurisdiction to consider them.

"Generally speaking, a court cannot assume that it has jurisdiction and proceed to resolve a case on the merits." *Ermuraki v. Renaud*, 987 F.3d 384, 386 (5th Cir. 2021) (per curiam) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998)). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3); *see also Cook v. Reno*, 74 F.3d 97, 99 (5th Cir. 1996) ("[I]f jurisdiction is lacking, then the court has no authority to consider the merits."). "[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their

jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011).

To establish a case or controversy sufficient to give a federal court jurisdiction over a claim, a plaintiff must show that (1) he has suffered or is about to suffer an injury in fact that is concrete and particularized; (2) a causal connection exists between the injury and the conduct complained of; and (3) it is likely and not merely speculative that a favorable decision will redress the injury. *See Nat'l Rifle Ass'n of Am., Inc v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 190–91 (5th Cir. 2012) (citing *Lujan v. Defs. of Wildlife*, 504 US 555, 560 (1992)). Each of these elements must continue through the duration of the litigation. *Id.* at 191. If any one of the elements is absent, or if any element ceases to exist during the litigation, the action becomes moot. *Id.* (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). Stated differently, an action becomes moot when the plaintiff no longer has a legally cognizable interest in the outcome. *See Powell v. McCormack*, 395 U.S. 486, 496 (1969). At that time, the federal court no longer has jurisdiction to order relief in the case.

In his amended complaint, Cook asks for injunctive relief to compel the defendants to comply with the *Ruiz* consent decree and Texas state law in the operation of TDCJ's Ramsey I Unit. But publicly available records show that Cook

14/27

is no longer assigned to the Ramsey I Unit. Instead, he has been transferred to the

Memorial Unit. *See* Find an Inmate, https://inmate.tdcj.texas.gov (visited Mar. 21,

2025). Because of this transfer, Cook no longer has a legally cognizable interest in

the procedures that may be followed, or not followed, at the Ramsey I Unit. Since

he is no longer at the Ramsey I Unit, his claims for injunctive relief, which seek to

compel the defendants to take certain actions at the Ramsey I Unit, are now moot.

Those claims are dismissed with prejudice for lack of jurisdiction.

### C.   **Cook Fails to Allege Actionable Claims**

Even if Cook's claims for injunctive relief were not moot,[1] he would not be

entitled to the relief he seeks. The Court will address each of his various claims in

turn.

### 1.   **Violations of the *Ruiz* Consent Decree**

The majority of Cook's claims are based on the defendants' alleged violations

of a consent decree entered in *Ruiz v. Estelle Unit, et al.*, No. H-78-987 (S.D. Tex.).

---

[1]The Court recognizes that TDCJ sometimes temporarily transfers inmates between Units for medical or other reasons. Because Cook has not notified the Court of a change of address, the Court addresses the merits of his claims in case his transfer from the Ramsey I Unit to the Memorial Unit is only temporary. However, the Court notes that Cook's failure to notify the Court of even a temporary change of address provides an independent basis for dismissing his action. *See* S.D. TEX. LOCAL RULE 83.4 ("A lawyer or pro se litigant is responsible for keeping the clerk advised in writing of the current address."); *see also* Dkt. 8, pp. 4-5 (advising Cook of his obligation under Local Rule 83.4 and that his failure to file a timely notice of change of address could result in the action being dismissed for lack of prosecution.).

For roughly thirty years, the Texas prison system was under a consent decree relating to prison conditions. *See Ruiz v. United States*, 243 F.3d 941, 943 (5th Cir. 2001). But in 2002, the court entered final judgment dismissing that case and terminating the court's jurisdiction over it. *See Ruiz*, No. H-78-987, at Dkt. 9016. Specifically, the court ordered that the "[d]efendants shall be relieved of the operation of this Order and jurisdiction shall terminate on July 1, 2002." *Id.* at Dkt. 8982. The court ordered that any attempt to revive the consent decree would not be permitted, and prisoners seeking relief from similar conditions would be required to file separate § 1983 actions. *Id.* at Dkts. 9061, 9062. As a result of these orders, any obligations imposed on TDCJ by the *Ruiz* consent decree lapsed and became unenforceable in 2002, when the court entered the final judgment. *See United States v. Overton*, 834 F.2d 1171, 1174–77 (5th Cir. 1987) (a consent decree requiring the Austin ISD to be unitary was no longer enforceable once the district court dismissed the case); *see also Thorpe v. Va. Dep't of Corr.*, No. 2:20-cv-00007, 2021 WL 2435868, at *3 (W.D. Va. June 15, 2021) ("Even construing the consent decree as federal law, it was vacated in 1997 and could not have been violated in 2012 as the plaintiffs' claim alleges.").

In this case, Cook alleges that the defendants are violating certain provisions of the *Ruiz* consent decree. But because any obligations under that consent decree ended when the court terminated jurisdiction in 2002, Cook's claims based on the

alleged violations of those obligations are unenforceable. His claims seeking the enforcement of certain provisions of the *Ruiz* consent decree are dismissed with prejudice as legally frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

### 2. Claims for Overcrowding

Although Cook cannot seek relief for alleged violations of the *Ruiz* consent decree, the dismissal of that action does not preclude claims based on current overcrowding conditions. *See Ruiz*, No. H-78-987, at Dkts. 9061, 9062. However, Cook's amended complaint and More Definite Statement do not contain facts establishing an actionable claim for prison overcrowding.

Overcrowding, standing alone, does not violate the Constitution. Instead, claims based on prison overcrowding arise from the Eighth Amendment, which prohibits prison conditions that constitute "cruel and unusual punishment." *Rhodes v. Chapman,* 452 U.S. 337, 345 (1981). Prison conditions constitute cruel and unusual punishment if they involve the "wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment." *Id.* at 347; *see also Hutto v. Finney,* 437 U.S. 678, 687 (1978) (finding prison conditions marked by insufficient diet, severe overcrowding, rampant violence, vandalism, and extended punitive isolation to be cruel and unusual), *abrogated on other grounds by Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42 (2024). But prison conditions are not unconstitutional

17/27

simply because they are restrictive; restrictive conditions "are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347. "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir. 1989). Therefore, extreme deprivations are necessary to establish an Eighth Amendment violation. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992).

Cook's allegations do not meet these standards. He alleges that inmates are allowed to move between their cells and the common areas, although not as freely as he would like. He alleges that inmates are allowed to leave their cells daily for meals, showers, recreation, law library time, classes, and medical appointments. His allegations that prison officials "hassle" inmates about moving around within the wing is not sufficient to meet the stringent standard necessary to show an Eighth Amendment violation. Neither do Cook's speculative allegations that the lack of dayroom space and free movement within the wing could contribute to "sicknesses." At most, Cook alleges facts showing that he and other inmates face the type of inconveniences that are "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. His allegations do not show the extreme deprivations necessary to establish an Eighth Amendment violation.

Cook's allegations are legally insufficient to state a claim for an Eighth

Amendment violation based on prison overcrowding. To the extent that he seeks to press a claim based on prison overcrowding, his action is dismissed for failing to state a claim upon which relief can be granted under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3.   Claims for Violations of State Law

In addition to his claims under the *Ruiz* consent decree, Cook also alleges multiple claims based on alleged violations of Texas law. These allegations fail to state a claim for relief under § 1983.

As explained above, § 1983 provides a federal cause of action to redress violations of the Constitution and federal law by state actors. *See Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Violations of state laws and regulations, standing alone, do not rise to the level of a violation of federal law. *See Nesmith*, 715 F.2d at 195 (noting that "a plaintiff under [§] 1983 must show deprivation of a federal right"). Therefore, violations of state law or state rules and regulations cannot be the basis for imposing liability under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332–33 (1986) (violations of state law do not become constitutional violations just because the defendant is a state official); *Giovanni v. Lynn*, 48 F.3d 908, 912–13 (5th Cir. 1995) (state law violations do not form the basis of § 1983 liability); *Fields v. City of S. Houston,* 922 F.2d 1183, 1189–91 (5th Cir. 1991) (violations of state law are generally not sufficient to establish a federal constitutional violation); *Bush v. Viterna*, 795 F.2d 1203, 1204 (5th Cir. 1986)

19/27

(affirming dismissal of claim characterized as "an illegitimate effort to seek federal enforcement of state law"); *Soliz v. Nueces County*, No. 2:23-cv-00107, 2024 WL 2137672, at *20 (S.D. Tex. Jan. 5, 2024) (violations of the Texas Administrative Code are insufficient to establish § 1983 liability), *report and recommendations adopted*, 2024 WL 1556456 (S.D. Tex. Apr. 10, 2024).

Cook's claims alleging that the defendants are violating Texas state laws, rules, and regulations do not state a claim for relief under § 1983, While Cook may be able to pursue these claims against the defendants in the Texas state courts, he may not pursue them in this Court under § 1983. Cook's claims for violations of state law are dismissed with prejudice as legally frivolous under 28 U.S.C. § 1915(e)(2)(B)(i).

### 4.   Claims Against Bryan Collier

Cook seeks to hold Collier responsible for the actions of his subordinates at the Ramsey I Unit based on Collier's position as the Executive Director of TDCJ. But his allegations fail to state a claim for supervisory liability under § 1983.

Under § 1983, supervisory officials are not responsible for the actions of their subordinates on a theory of either vicarious liability or *respondeat superior.  See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Instead, only the direct and personal actions or omissions of government officials will give rise to individual liability under § 1983. *See Alton v.*

*Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). Because Collier may not be held vicariously liable for actions taken or not taken by prison officials at the Ramsey I Unit, Cook's claims against him on this basis are legally frivolous.

However, while supervisors may not be liable under § 1983 for the actions of their subordinates, they may be held liable for their own actions. To state a claim against a supervisory official under § 1983, the plaintiff must allege facts showing either the supervisor's personal involvement in actions that caused a constitutional violation or the supervisor's decision to implement an unconstitutional policy that resulted in a violation of the plaintiff's constitutional rights. *See Thompkins,* 828 F.2d at 303–04; *see also Gates v. Tex. Dep't of Prot. & Regul. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008).

Cook does not allege a claim under either of these standards. First, he does not allege any facts showing that Collier was personally involved with any of the allegedly wrongful acts at the Ramsey I Unit. He does not allege facts showing that Collier knew of the alleged violations and yet failed to take affirmative steps to address them. And he does not identify any policy implemented by Collier that is so deficient as to be unconstitutional. Instead, Cook relies solely on Collier's position as the TDCJ Executive Director to contend that Collier should be held liable for the failure of the Ramsey I Unit defendants to follow TDCJ's rules and policies. These allegations, even taken as true, are legally insufficient to state a claim for

supervisory liability against Collier. Cook's claims against Collier are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

### 5.    Claims for Tampering with Legal Mail

Cook alleges that mailroom personnel at the Ramsey I Unit are tampering with his legal mail, both by failing to mail outgoing documents in a timely manner and by opening incoming mail outside the presence of the inmates to whom it is addressed. But Cook does not allege that any of the defendants were personally involved in any of these actions.

A prison official's interference with a prisoner's legal mail may, in some cases violate the prisoner's constitutional right of access to the courts. Additionally, such interference may violate the prisoner's First Amendment right to free speech. *See Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). But, as with all other § 1983 claims, a prison official may only be held liable for his or her own actions—not those of his or her subordinates. *See Oliver*, 276 F.3d at 742; *Thompkins*, 828 F.2d at 303.

In his More Definite Statement, Cook alleges that mail addressed to the "Bob Casey Courthouse" was returned to him with a notation that legal mail had to be addressed to a person rather than a building. (Dkt. 11, pp. 18, 22). He also alleges that prison mailroom personnel do not send legal mail out in a timely or proper manner. (*Id.*). In addition, he alleges that the "personnel of the mailroom" are

22/27

tampering with inmates' outgoing legal mail and opening incoming legal mail outside of the inmates' presence. (*Id.* at 22, 24).

While these practices could implicate Cook's constitutional rights, he does not allege that any of the named defendants have personally taken these actions. Cook does not allege facts showing that any of the named defendants have personally tampered with his mail, that they have violated TDCJ mail handling rules, or that they have adopted a policy that permits such action. Indeed, Cooke specifically alleges that it is mailroom personnel—not the named defendants—who are acting in violation of TDCJ's mail-handling rules.

Because Cook does not allege that the named defendants have been personally involved in the actions that allegedly violate his constitutional rights, his claims against the defendants based on the alleged tampering with his legal mail fail to state a claim upon which relief can be granted. These claims are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii).

### 6. **Claims for Retaliation**

Cook alleges that Warden DeMoss and Major Baron have retaliated against him for filing grievances and complaints. Specifically, he alleges that Warden DeMoss retaliated against him for sending a letter to Texas State Representative Carl Sherman concerning the alleged violations at the Ramsey I Unit by threatening to have Cook transferred to another Unit. (Dkt. 11, p. 25). He alleges that Major Baron

threatened to "take him down" in retaliation for Cook having written complaints about her. (*Id.* at 25-26, 28).

Prison officials may not retaliate against an inmate for complaining through proper channels about a prison official's misconduct. *See Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *See Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008). To establish the defendant's intent, an inmate must allege more than his personal belief that he is the victim of retaliation. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). Instead, a prisoner must produce "direct evidence of motivation" or, at the very least, he must "allege a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166. To establish a retaliatory adverse act, the prisoner must allege a sufficiently serious action. Acts of retaliation that are so inconsequential as to be considered *de minimis* do not satisfy the "retaliatory adverse act" requirement. *See Morris v. Powell*, 449 F.3d 682, 684–85 (5th Cir. 2006); *see also Jones*, 188 F.3d at 325 (restriction to five hours per week of library time was not a sufficiently serious adverse act to rise to the level of a constitutional violation); *Gibbs v. King*, 779 F.2d 1040 (5th Cir. 1986) (a single

24/27

incident, involving a minor sanction, is insufficient to prove a retaliatory act).

Cook's claims that Warden DeMoss threatened to have him transferred to a different unit and that Major Baron threatened to "take him down" allege only inconsequential acts. Cook does not allege that any retaliatory action was ever actually taken against him, and the threats allegedly made by these officials are too inconsequential to rise to the level of a constitutional violation. Because these acts, even if true, do not satisfy the "retaliatory adverse act" requirement, Cook's retaliation claims against Warden DeMoss and Major Baron are legally insufficient to state claim upon which relief can be granted under § 1983.

Cook also alleges that Major Baron has had other officers write a false disciplinary charges against inmates in retaliation for them filing complaints against her. (Dkt. 11, pp. 26-28). Specifically, he states that Major Baron has had Sergeant Lopez plant drugs and other contraband on inmates. (*Id.* at 26). He states that she has had "Officer Agatha" write false disciplinary cases on inmates. (*Id.*). But Cook does not allege any facts showing that Major Baron has either personally written a false disciplinary case against him or caused others to do so. Because Cook does not allege facts showing that Major Baron has retaliated *against him* by having others take actions *against him*, his allegations fail to state a retaliation claim upon which relief can be granted. Any claim based on these allegations is dismissed under 28 U.S.C. § 1915(a)(2)(B)(ii).

25/27

### 7.    Claims for Failing to Process Grievances

Finally, Cook alleges that Ramsey I Unit personnel have failed to properly investigate his grievances and timely respond to them. These allegations fail to state a claim because it is well established that an inmate has not constitutionally protected interest "in having grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374. Accordingly, Cook's claims based on alleged deficiencies in the handling of his grievances are dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief can be granted.

## IV.    CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. Cook's Complaint for Violation of Civil Rights (Dkt. 1) is **DISMISSED** with prejudice.

2. The dismissal will count as a "strike" for purposes of 28 U.S.C. § 1915(g).

3. Any pending motions, including Cook's "Motion for Action on More Definite Statement," (Dkt. 12), are **DENIED** as moot.

4. Final judgment will be separately entered.

The Clerk shall send a copy of this Memorandum Opinion and Order to the plaintiff. The Clerk shall also send a copy of this dismissal to the Three-Strikes List

26/27

Manager at the following email: **Three_Strikes@txs.uscourts.gov.**

SIGNED at Houston, Texas on _____ *Mar 25* _____, 2025.

DAVID HITTNER
UNITED STATES DISTRICT JUDGE

27/27